election to defeat this lawsuit, even though plaintiffs have offered us no such evidence.[3] *See* Opinion at 1144–45. The Court seems to place the burden on the defendants to disprove its supposition of manipulation. *See* Opinion at 1145. However, once the defendants produce evidence of Jennings' repeated success, it is the plaintiffs who shoulder the burden of controverting such success. *See Gingles,* 478 U.S. at 77, 106 S.Ct. at 2780 ("In some situations, it may be possible for § 2 plaintiffs to demonstrate that such sustained success does not accurately reflect the minority group's ability to elect its preferred representatives.") (footnote omitted).

The district court also did not clearly err by finding that the policy underlying at-large school board elections in Liberty County was not tenuous. Although the statute passed by the Florida legislature in 1947 may have been designed to dilute the voting power of the black community, this case is not about statewide legislation. Rather, this case is about the adoption and continued maintenance of at-large elections by Liberty County. The Court emphasizes that the 1947 Florida statute required the adoption of at-large school board elections. *See* Opinion at 1150. While this may have been so as a general rule, counties could opt out of at-large elections by population act. Indeed, Liberty County used population acts to keep its single-member district system until 1953, a fact of which the plaintiffs' expert Dr. Schofner was unaware. *Solomon,* 957 F.Supp. at 1568 n. 107. After considering conflicting expert testimony and evidence from both sides, the district court found that Liberty County adopted at-large school board elections in 1953 as a result of a citizen's reform movement to abolish the existing ward-type political system.[4] This finding was not clearly erroneous.

After subtracting the three factors implicated by the two errors it perceives, the Court weighs the evidence for itself and finds that the evidence favoring appellees does not "tip the scales in appellees' favor." *See* Opinion at 1150. Because it would have weighed the evidence differently, the Court concludes that the district court's finding of no vote dilution is clearly erroneous. By so doing, the Court duplicates the role of the district court and thereby "oversteps the bounds of its duty under Rule 52(a)." *Anderson,* 470 U.S. at 573, 105 S.Ct. at 1511. Accordingly, I respectfully dissent.

Beth Ann FARAGHER; Nancy Ewanchew, Plaintiffs–Appellants, Cross–Appellees,

v.

CITY OF BOCA RATON, a political subdivision of the State of Florida, Defendant–Appellee, Cross–Appellant,

Bill Terry; David Silverman, Defendants–Appellees.

No. 94–4878.

United States Court of Appeals, Eleventh Circuit.

Feb. 4, 1999.

William R. Amlong, Amlong & Amlong. P.A., Ft. Lauderdale, FL, Carolyn L. Wheel-

---

**3.** Indeed, in a 1990 county-wide referendum 59.1 percent of black voters voted against single-member districts for county commission elections, and 60.0 percent of black voters voted against single-member districts for school board elections. The county's black voters thus prefer the current system and oppose the remedy sought (on their behalf, ironically) in this lawsuit. I realize this Court opined in a subsequently vacated panel decision that "class opposition to the remedy that may result from the successful litigation of a section 2 claim is irrelevant in weighing the totality of the circumstances," *Solomon v. Liberty County,* 865 F.2d 1566, 1584 (11th Cir. 1988), *vacated,* 873 F.2d 248 (11th Cir.1989).

Irrespective of their relevancy to weighing the Senate Factors, however, the results of the 1990 referendum certainly militate against the Court's supposition that white officials conspired to manipulate black voters.

**4.** "The ward system had allowed a single family or faction to control each district—effectively disenfranchising other voters (who at that time were all white), while furthering the special interests of the family or faction at the expense of the rest of the county." *Solomon,* 957 F.Supp. at 1568 (citing expert testimony of Dr. Billings and Mr. Eubanks).

er, EEOC, Washington, DC, for Plaintiffs–Appellants, Cross–Appellees.

Cathy M. Stutin, Peter J. Hurtgen, Morgan, Lewis & Bockius, Miami, FL, for City of Boca Raton.

Michael T. Burke, Christine M. Duignan, Johnson, Anselmo, Murdoch, Burke & George, P.A., Ft. Lauderdale, FL, for Bill Terry.

Before, HATCHETT, Chief Judge, TJOFLAT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit Judges, and KRAVITCH, Senior Circuit Judge.

BY THE COURT:

The judgment of the district court is hereby REINSTATED and AFFIRMED.

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Arthur MILLER, Defendant–Appellant.**

No. 98–8228
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Feb. 4, 1999.